1

2

3          UNITED STATES DISTRICT COURT

4         NORTHERN DISTRICT OF CALIFORNIA

5

6   LAURIE MUNNING,                    Case No.  16-cv-03804-TEH

7              Plaintiff,

8        v.                            **ORDER GRANTING IN PART AND
                                       DENYING IN PART DEFENDANTS'**
9   THE GAP, INC., et al.,             **MOTION TO DISMISS PLAINTIFF'S
                                       CLASS ACTION COMPLAINT**
10             Defendants.

11

12          On July 18, 2016, Defendants filed a Motion to Dismiss Plaintiff's Class Action

13  Complaint ("Mot.") (ECF No. 16).  Plaintiff timely opposed the motion ("Opp'n") (ECF

14  No. 19) and Defendant timely replied ("Reply") (ECF No. 23).  The Court heard oral

15  arguments on the motion on October 17, 2016.  After carefully considering the parties'

16  written and oral arguments, the Court GRANTS IN PART and DENIES IN PART

17  Defendants' motion for the reasons set forth below.

18

19

20  **I. BACKGROUND**

21          The following factual allegations are taken from Plaintiff's Complaint ("Compl."),

22  unless otherwise stated, and are therefore accepted as true for the purposes of this motion.

23  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

24

25          Defendants are for-profit entities that sell apparel and other personal items in retail

26  stores and online.  Plaintiff Laurie Munning is a citizen of New Jersey.  In March 2016,

27  Plaintiff purchased three clothing items from the Defendants' websites: one pair of swim

28

United States District Court
Northern District of California

trunks from the Gap Factory retail website, and one dress and one sweater from the Banana Republic Factory website.[1]  Each of these items was advertised as being on sale.[2]  For example, the price of the swim trunks appeared as follows:

~~$24.99~~ **32% off**

**Now $16.99**

Plaintiff purchased the items in a single transaction using her Banana Republic Credit Card.  Decl. of Christine Landers ¶ 8 ("Landers' Decl.") (ECF No. 16-5).  Plaintiff alleges the prices she paid for the three products remained unchanged for the entire week following her purchase.  One month after her purchase, the price of the swim trunks slightly increased to $17.99, while the price of the dress still remained unchanged.[3]  Consequently, the Plaintiff alleged "upon information and belief" that the three items she purchased "were never sold or offered for sale at the non-discounted, base prices listed on Defendants' websites . . . . Rather, the items were always sold and offered for sale at a price at or near the purported 'sale' price that Plaintiff paid."  Moreover, Plaintiff alleges these actions were part of a "uniform policy" and "systematic scheme" which Defendants knowingly implemented to defraud purchasers.  Plaintiff alleges "[she] and the class members would not have been willing to pay for the items they purchased, or would not have paid what they paid for the items they purchased, if they knew that such items were not in fact discounted from their everyday, regular prices."

---

[1] The Gap Factory and Banana Republic Factory websites (www.gapfactory.com and www.bananarepublicfactory.com, respectively) allow a consumer to browse and select items from both websites and to pay for the products in a single transaction.
[2] The swimming trunks were priced at $16.99 (32% off); the sweater was priced at $45.98 (16% off); and the dress was priced at $44.98 (50% off).
[3] Plaintiff did not mention if the price of the sweater changed at this point in time.

2

Plaintiff brought this putative class action against Defendants challenging the Defendants' advertising, marketing, and sales practices on the online Gap Factory and Banana Republic Factory store websites.  Plaintiff seeks eleven claims for relief against the Defendants: (1) Violations of State Consumer Protection Statutes; (2) Violation of the California Legal Remedies Act ("CLRA"); (3) Violation of the California Unfair Competition Law ("UCL"); (4) Violation of California's False Advertising Law ("FAL"); (5) Violation of the New Jersey Consumer Fraud Act ("NJCFA"); (6) Violation of the New Jersey Truth in Consumer Contract, Warranty, and Notice Act ("TCCWNA"); (7) Breach of Contract; (8) Breach of Contract under Implied Covenant of Good Faith and Fair Dealing; (9) Breach of Express Warranty; (10) Unjust Enrichment; and (11) Negligent Misrepresentation.

Defendants have filed a motion to dismiss all of Plaintiff's claims and Plaintiff's request for injunctive relief and restitution.  *See generally* Mot.  Defendants also seek to dismiss Plaintiff's claims arguing they are subject to arbitration.[4]  Mot. at 22–24.

## II. LEGAL STANDARD

### a. Federal Rules of Civil Procedure 12(b)(6) and 9(b)

Dismissal is appropriate under Rule 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Specifically, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

---

[4] Although it was unclear from the Defendants' motion to dismiss whether the Defendants sought to compel arbitration or to dismiss the claims, Defendants made it clear during oral argument they seek the latter option.

defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted). Dismissal of claims that fail to meet this standard should be with leave to amend, unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296, 1298 (9th Cir. 1998).

In addition, fraud claims are subject to a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).  Allegations of fraud must state "the who, what, when, where, and how" of the misconduct charged, as well as "what is false or misleading about a statement, and why it is false."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  Such allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted).

///

///

### III. DISCUSSION

Defendants argue all of Plaintiff's claims fail for several reasons. The Court shall first address the overarching issues, and then address the individual claims.

**Plaintiff has Standing Under the FAL, UCL and CLRA**

Defendants argue Plaintiff lacks standing to bring her California consumer protection claims because she has not alleged an "economic injury." Mot. at 19-20; Reply at 12. Indeed, in order to have a valid claim under the FAL, UCL, or CLRA, Plaintiff must show she has suffered an "economic injury." *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 322–23 (2011). However, Defendants' argument is unavailing because the Ninth Circuit has explained that "when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that [s]he would not have made the purchase but for the misrepresentation, [s]he has standing to sue . . . because [s]he has suffered an economic injury ." *Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1107 (9th Cir. 2013). Here, Plaintiff has sufficiently pleaded an economic injury by alleging that Defendants were engaged in disseminating false price information and also alleging that "Plaintiff and the class members would not have been willing to pay for the items they purchased . . . if they knew that such items were not in fact discounted from their everyday, regular prices." Compl. ¶ 208. Plaintiff's allegations provide standing and are enough to survive Defendants' motion to dismiss.

**Plaintiff's Allegations against Multiple Defendants Under Rule 9(b)**

Defendants contend Plaintiff's fraud-based claims should be dismissed because "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant .

. . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  Mot. at 12 (brackets in original) (quoting *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1021 (N.D. Cal. 2009)).  While plaintiffs are generally required to specifically identify the role of each defendant in an alleged fraudulent scheme, courts are willing to relax this standard in certain situations.  For example, in *Moore v. Kayport Package Express Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) the Ninth Circuit recognized that "[Rule 9(b)] may be relaxed as to matters within the opposing party's knowledge. . . . [I]n cases of corporate fraud, plaintiffs will not have personal knowledge of all of the underlying facts." (citation omitted).  More specifically, the court recognized that "[i]nstances of corporate fraud may also make it difficult to attribute particular fraudulent conduct to each defendant as an individual."  *Id.*

Also, in *Sussex Fin. Enters. v. Bayerische Hypo-Und Vereinsbank AG,* 2010 U.S. Dist. LEXIS 671, at *11 (N.D. Cal. Jan. 6, 2010), the court allowed the "lumping" of a parent corporation and two of its subsidiaries, without identifying the role that each defendant played in the alleged fraud.  In doing so, the Court emphasized the parent-subsidiary relationship between the parties and also the fact that all the defendants were represented by the same counsel.  In this context, the Court found "lumping" to be unlikely to frustrate notice of the claims as to any particular defendant.  *Id.*

The same reasoning from *Moore* and *Sussex* apply here.  First, because the Defendants all share a parent-subsidiary relationship with The Gap Inc. as the parent company and because all the Defendants are represented by the same counsel, frustration of notice of the claims to each defendant is unlikely.  Further, because this is a case of alleged corporate fraud involving multiple subsidiary entities and because the allegations

United States District Court
Northern District of California

stem from advertising on a retail website that allows customers to simultaneously shop from two brands, Plaintiff is likely to experience difficulty in obtaining information regarding Defendants' internal policies and exactly which subsidiaries and employees took part in the alleged fraud.  In sum, given the circumstances of this case, this Court finds Plaintiff's allegations are sufficiently detailed to put each Defendant on notice of the claims against it, and to allow each Defendant to prepare its defense.

**Application of Rule 9(b) to the Entire Pleading**

At issue is whether Plaintiff's entire complaint "sounds in fraud" and is therefore subject to the Rule 9(b) heightened pleading standard.  Mot. at 5–6; Reply at 3.  In *Kearns*, 567 F.3d at 1125, the Ninth Circuit held that when a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim" the claim is "sound in fraud" and, therefore, the pleading as a whole must satisfy the particularity requirement of Rule 9(b).  *Id.* (quoting *Vess*, 317 F.3d at 1103–04).

Here, where Plaintiff's claims arise out of the same alleged "systematic scheme of false and misleading advertising, marketing, and sales practices", Compl. ¶2, the Court finds Plaintiff's claims to arise from a "unified course of fraudulent conduct."[5]  Thus, Plaintiff's entire pleading is subject to the Rule 9(b) heightened pleading standard.

///

///

---

[5] Plaintiff argues in a footnote that not all of her claims are subject to the heightened Rule 9(b) pleading standard.  Opp'n at 4 n. 1.  Specifically, Plaintiff argues Count 8 (implied covenant of good faith and fair dealing) and Count 10 (unjust enrichment) are only required to comply with FED. R. CIV. P. 8(a).  Plaintiff also argues Count 5 (New Jersey Consumer Fraud Act claim) and Count 6 (New Jersey TCCWNA claim) do not "sound in fraud" because they rely on regulatory violations and do not have fraud as a required element.  *Id.*  Because these claims are dismissed, *see infra*, the Court need not address these arguments.

**Count 1: Violation of State Consumer Protection Statutes**

Defendants argue that Plaintiff, a New Jersey citizen, does not have standing to pursue claims under other states' consumer protection laws besides California and New Jersey. "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *In Re Apple & AT & TM Antitrust Litigation*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008) (quoting *Lewis v. Casey*, 518 U.S. 343, 347 (1996)). Plaintiff conceded during oral arguments she has no standing to allege violations of consumer protection claims in which she does not reside. Accordingly, Defendants' motion to dismiss Plaintiff's first claim is GRANTED WITH PREJUDICE.

**Counts 2, 3, and 4: Violation of the California Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and California Fair Advertising Law ("FAL")**

Claims brought under the CLRA, UCL, or the FAL are governed by the "reasonable consumer" test. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under this test, plaintiffs must show that reasonable consumers of the public are likely to be deceived. *Id.* (citation omitted). Additionally, the California Supreme Court recognized in *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) that California's consumer protection laws prohibit "not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." (bracket in original) (citation omitted). With these

8

principles in mind, the Court turns to Defendants' arguments seeking to dismiss these claims.

### a. CLRA

Section 1782(a) of the CLRA requires that plaintiffs notify the defendant, in writing, of the "particular alleged violations of Section 1770" at least thirty days before commencing suit.  Cal Civ. Code § 1782(a)(1) (West 2016).  The purpose of this requirement is to "provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished."  *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 41 (1975). This purpose can only be accomplished by a literal application of the notice provisions.  *Id.*

Defendants argue that Plaintiff's CLRA claim must be dismissed because Plaintiff failed to provide Defendants sufficient notice under § 1782(a)(1). Mot. at 14; Reply at 8–9.  Specifically, Defendants allege that Plaintiff's CLRA notice letter failed to identify the "particular alleged violations of Section 1770."  In *Romero v. Flowers Bakeries, LLC,* No. 14-cv-4189-BLF, 2015 WL 2125004 (N.D. Cal. May 6, 2015), the court was addressing whether a plaintiff had complied with the CLRA notice requirement when she did not identify the particular provisions of the CLRA that were violated.  *Id.* at *8.  That court held that a CLRA notice letter is deficient when it "merely sets forth her substantive allegations and invites Defendant to figure out which provisions of the CLRA are applicable."  *Id.*

Here, *Romero* establishes that Plaintiff's CLRA notice is insufficient.  Plaintiff's letter alleged Defendants' violation of several statutes but failed to specifically identify which provisions of the cited statutes they violated.  *See* Decl. of Joseph Duffy, Ex. 1 (ECF

9

No. 16-2).  Because the Plaintiff failed to fully comply with the CLRA notice provisions, Defendants' motion to dismiss Plaintiff's CLRA claim is GRANTED WITHOUT PREJUDICE.

### b. FAL

Defendants attack this claim arguing there was no misrepresentation because Defendants never used the words "original" or any related synonym when pricing their items.  Mot. at 8.  This argument is foreclosed by *Knapp v. Art.com*, No. 16-cv-00768-WHO, 2016 WL 3268995 (N.D. Cal. June 15, 2016).  In that case the court was addressing whether the plaintiff had alleged sufficient facts to state an FAL claim.  The plaintiff had alleged that the defendant violated the FAL because defendant had misled customers into believing they were getting a significant discount, when in actuality, they were paying the regular price or more for their items.  *Id.* at *4. The defendant argued the plaintiff's claim lacked merit because the defendant had never used words like "formerly" or "regularly" when advertising its prices.  *Id.* at *4.  The court rejected this argument finding no authority indicating that such language is required for a valid FAL claim.  *Id.*  The result here is the same.  The lack of specific words indicating the regular price of Defendants' products is not fatal to Plaintiff's claim.

Defendants also argue that Plaintiff's complaint fails to include any facts indicating her belief that the strikethrough amount represented the original price of the items she purchased.  *Id.*  The Court is not convinced.  In *Hinojos*, 718 F.3d at 1102–03, the Ninth Circuit found the FAL expressly prohibits sellers from advertising products as being substantially reduced from their "original" price, when, in reality, the products are routinely sold at their advertised "sale" price. Accepting the factual allegations as true and

10

construing the complaint in the light most favorable to the nonmoving party, the

complaint's allegations are sufficient to show Plaintiff believed the strikethrough price to

be the original price of the items she purchased.  Indeed, Plaintiff attached copies of the

alleged fraudulent marketing materials to her complaint which detail the who, what, when,

where, and how of the alleged conduct.  Compl., Ex. A.  By alleging that products on

Defendants' websites listed crossed-out prices followed by a percentage discount and a

new price, Plaintiff has provided enough facts such that it is plausible a reasonable

consumer could view the prices as being deceptive.  Accordingly, Defendants' motion to

dismiss Plaintiff's FAL claim is DENIED.[6]

**c. UCL**

California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent

business act or practice."  Cal. Bus. & Prof. Code § 17200 (West 2016).  Because the UCL

is written in the disjunctive, a plaintiff can base a UCL claim on any of the three prongs:

(1) unlawful, (2) unfair, or (3) fraudulent.  *See Davis v. HSBC Bank Nevada, N.A.*, 691

F.3d 1152, 1168 (9th Cir. 2012). Here, Defendant contends Plaintiff has failed to allege an

"unlawful" UCL claim.  Mot. at 12-13.

The UCL's scope is broad and allows "violations of other laws to be treated as

unfair competition that is independently actionable."  Kasky¸ 27 Cal. 4th at 949.

Consequently, "any violation of the false advertising law . . . necessarily violates the

UCL."  *Id.* at 950 (ellipsis in original) (internal brackets and quotation marks removed).

Because the Plaintiff has sufficiently pled a violation of the FAL, as mentioned above,

---

[6] Because Plaintiff has sufficiently pleaded a misrepresentation to support her FAL claim, the Court need not address her omission-based claims.

11

Plaintiff also has a valid claim under the unlawful prong of the UCL.[7]  Accordingly,

Defendants' motion to dismiss Plaintiff's UCL claim is DENIED.

**Count 5: Violation of the New Jersey Consumer Fraud Act**

To state a valid NJCFA claim, a plaintiff must allege sufficient facts to demonstrate:

(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the

defendant's unlawful conduct and plaintiff's ascertainable loss.  *Int'l Union of Operation*

*Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (2007).

Defendants argue Plaintiff has failed to properly allege both unlawful conduct and an

ascertainable loss.  Mot. at 13–14, 20.  The Court turns to these arguments.

**a. Unlawful conduct**

The NJCFA prohibits "any unconscionable commercial practice, deception, fraud,

false pretense, false promise, misrepresentation, or the knowing[] concealment,

suppression, or omission of any material fact . . . in connection with the sale or

advertisement of any merchandise . . . ."  N.J. Stat.Ann. §56:8-2 (West 2016).  "Proof of

any one of [these] acts or omissions or of a violation of a regulation will be sufficient to

establish unlawful conduct under the Act."  *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 19

(1994).  As stated above in the discussion of the FAL claim, the Plaintiff has provided

enough facts to sufficiently allege that Defendants engaged in misrepresentation when it

advertised and priced its products online.  As such, Plaintiff has sufficiently pleaded an

unlawful conduct.

---

[7] Because Plaintiff has sufficiently stated a claim under the unlawful prong of the UCL, and because Defendant only challenged this prong, the Court need not address the other two prongs of the UCL.  *See Arevalo v. Bank of America Corp.*, 850 F. Supp. 2d 1008, 1023 (N.D. Cal. 2011).

United States District Court
Northern District of California

1

**b. Ascertainable Loss**

2

While "[t]here is little that illuminates the precise meaning that the [New Jersey]

3

Legislature intended in respect of the term 'ascertainable loss' [in the NJCFA],"

4

*Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005), an ascertainable loss

5

6

generally occurs when "a consumer receives less than what was promised." *Arcand v.*

7

*Brother Int'l. Corp.*, 673 F. Supp. 2d 282, 300 (D.N.J. 2009) (citation omitted).  The

8

NJCFA "does not require that the [ascertainable] loss be monetary nor that it [] be plead

9

beyond a reasonable degree of certainty", *id.*, however, New Jersey courts require "the

10

11

consumer to quantify the difference in value between the promised product and the actual

12

product received." *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d

13

529, 541 (D.N.J. 2011).

14

Here, Defendants allege that Plaintiff has failed to plead an ascertainable loss as

15

16

required by statute.  Mot. at 20; Reply at 13.  The Court agrees.  Plaintiff failed to contest

17

this argument in her opposition.  The Plaintiff was also unable to provide a satisfactory

18

answer to the Court's direct question during oral arguments asking her to show how her

19

loss was "quantifiable or measurable, rather than merely theoretical."[8]  *See* Order re: Oct.

20

21

17, 2016 Hearing (ECF No. 25).   Plaintiff's complaint merely alleges she "suffered an

22

ascertainable loss . . . as a result of Defendants' unlawful conduct . . . ."  Compl. ¶10.

23

Plaintiff's allegation concerning her ascertainable loss is a conclusory statement that is

24

25

26

---

[8] Plaintiff responded to the Court's question on ascertainable loss citing the Ninth Circuit

27

*Hinojos* decision.  However, the *Hinojos* case, only sheds light on California's consumer protection statutes, not on "ascertainable loss" under New Jersey law.  As such, Plaintiff

28

has failed to cite any legal authority supporting her assertion that she has sufficiently pleaded an ascertainable loss.

13

United States District Court
Northern District of California

insufficient to withstand a motion to dismiss.  For this reason, Defendants' motion to dismiss Plaintiff's NJCFA claim is GRANTED WITHOUT PREJUDICE.

**Count 6: Violation of the New Jersey Truth in Consumer Contract, Warranty and Notice Act (TCCWNA)**

In order to bring a claim under the New Jersey TCCWNA, a plaintiff must show: (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the defendant gives or displays any written consumer notice or sign; and (4) the notice or sign includes a provision that violates any clearly established legal right of a consumer or responsibility of a seller." *See Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 135 (3d Cir. 2014).  Plaintiff alleges Defendants have violated the TCCWNA because Defendants' online prices violated New Jersey law and a federal regulation: N.J.Admin. Code. §§ 13:45A–9.3(a) (West 2016)  and 13:45A-9.4 (a) (West 2016), N.J.Stat.Ann. § 56:8-2, and 16 C.F.R. § 233.1 (2016).  Compl. ¶¶166-67; Opp'n at 20–21.  Defendants argue Plaintiff has failed to plead sufficient facts to demonstrate a violation of a "clearly established legal right."  Mot. at 17.  The Court addresses each purported violation in turn.

Regarding the alleged violation of 16 C.F.R. § 233.1, Defendants argue this allegation does not support a TCCWNA claim.  Mot. at 17 n. 4.  Defendants are correct. The Federal Trade Commission Act does not provide a private right of action.  *Doty v. Bayview Financial L.P.*, No. 08-4090 (JEI), 2009 WL 4757569, at *1 n. 3 (D.N.J. Dec. 4, 2009).  Therefore, Plaintiff's TCCWNA claim cannot be based on a violation of § 233.1. *See Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 380 (D.N.J. 2015) (dismissing a TCCWNA claim based on a violation of the Food, Drug and Cosmetics Act,

14

which provides no private right of action); *Castro v. Sovran Self Storage, Inc.*, 114 F. Supp. 3d 204, 218 (D.N.J. 2015) (dismissing a TCCWNA claim based on a violation of the New Jersey Insurance Producer Licensing Act, which provides no private right of action).

Regarding the purported violations of the New Jersey Administrative Code, Plaintiff did not make these allegations in her complaint and raised them for the first time in her opposition. *See* Opp'n at 20–21. "A court *may not* look beyond the complaint to a plaintiff's moving papers" when determining whether plaintiffs have stated a legally cognizable claim. *Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) (emphasis in original). Therefore, these purported statutory violations cannot support Plaintiff's TCCWNA claim.

This leaves one last statutory violation as the basis of Plaintiff's TCCWNA claim: N.J.S.A. § 8-2, the New Jersey Consumer Fraud Act (Count 5). As discussed above, this claim has not been sufficiently pleaded. Accordingly, Defendants' motion to dismiss this claim is GRANTED WITHOUT PREJUDICE.

**Count 7: Breach of Contract**

In California, a breach of contract requires: (1) the existence of a contract; (2) plaintiff's performance; (3) defendant's breach; and (4) the resulting damages to the plaintiff. *See Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011); *accord EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC*, 113 A.3d 775, 787 (N.J. Super. Ct. App. Div. 2015). Here, Plaintiff alleges she and class members entered a contract that they would pay Defendants for their products, and that Defendants, in return, would provide them with a specific discount on the price of their purchases. Compl. ¶¶ 170-72. Plaintiff

15

further alleges that Defendants "breached the contracts with Plaintiff and the class members by failing to comply with the material term of providing the promised discount . . . ." Compl. ¶ 174.

Defendants argue Plaintiff has failed to state a claim for breach of contract because a discount is not a material term of the contract between the parties. Reply at 11. And even if a discount were a material term, there was no breach of contract here because Defendants offered to sell to Plaintiff the item at the discounted price, Plaintiff agreed to pay that price, and Plaintiff received the item for the agreed price. Mot. at 16; Reply at 11. Defendants' arguments are foreclosed by the *Hinojos* opinion. In *Hinojos*, the Ninth Circuit was reviewing a district court's decision to dismiss plaintiff's UCL, FAL, and CLRA claims. The plaintiff had alleged that Kohl's, a retail clothing store, had engaged in deceptive pricing by advertising several items as "substantially reduced from their 'original' or 'regular' price" when, in reality, the "sale" prices were the normal price for the items. *Id.* at 1102. Among other grounds, the district court justified dismissing the plaintiff's claims finding he received the "benefit of the bargain" because he received the products he purchased at the agreed upon price and they were not defective. *Id.* at 1107. The Ninth Circuit rejected this reasoning finding the "benefit of the bargain" defense is only permissible where the alleged misrepresentation is not "material." *Id.* (citing *Kwikset*, 51 Cal. 4th 310, 332–33 (2011). The court further explained that "[a] representation is 'material,' . . . if a reasonable consumer would attach importance to it *or* if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining h[er] choice of action.'" *Id.* (emphasis in original). The court found price reductions were material because consumers "reasonably

16

regard price reductions as material information when making purchasing decisions." *See id.* In accordance with *Hinojos*, this Court finds the Defendants' advertised price reductions were material; therefore, assuming Plaintiff's allegations to be true, Defendants cannot claim there was no breach of contract because the Plaintiff received the "benefit of the bargain." In sum, Plaintiff has sufficiently pleaded a breach of contract claim. Accordingly, Defendants' motion to dismiss Plaintiff's breach of contract claim is DENIED.

**Count 8: Breach of Contract Under Implied Covenant of Good Faith and Fair Dealing**

Defendants argue Plaintiff's Breach of Contract Under Implied Covenant of Good Faith and Fair Dealing claim should be dismissed "because it relies on the same allegations as her breach of contract claim." Mot. at 18. "If the allegations [for a breach of implied covenant] do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v. Sec. Pac. Bus. Credit Inc.*, 222 Cal. App. 3d 1371, 1395 (1990); *accord T.J. McDermott Transp. Co., Inc. v. Cummins, Inc.*, No. 14-04209 (WHW)(CLW), 2015 WL 1119475, at * 13 (D.N.J. Mar. 11, 2015) (same). The Court agrees with Defendants. Plaintiff's breach of implied covenant claim of good faith and fair dealing is duplicative and relies on the same facts as her breach of contract claim. Accordingly, Defendants' motion to dismiss Plaintiff's breach of implied covenant of good faith and fair dealing is GRANTED WITH PREJUDICE.

17

**Count 9: Breach of Express Warranty**

To plead a claim for breach of express warranty in New Jersey, Plaintiff must plead that (1) Defendants made an affirmation, promise, or description that became part of the basis of the bargain, and (2) the goods ultimately did not conform to the affirmation, promise or description. *New Hope Pipe Liners, LLC v. Composites One, LCC*, No. 09-3222, 2009 WL 4282644, at *5 (D.N.J. Nov. 30, 2009). California requires the same elements but additionally requires that the breach of express warranty cause an injury to the plaintiff. *See Rodarte v. Phillip Morris, Inc.*, No. CV 03-0353 FMC (CTx), 2003 WL 23341208, at *5 (C.D. Cal. June 23, 2003). In California, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Cal Com. Code § 2313(a) (West 2016). Additionally, in California, "any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id.* § 2313(b).

Defendants argue this claim should be dismissed because Plaintiff has failed to identify the specific terms of the warranty. Mot. at 16-17; Reply at 11. However, Plaintiff's complaint specifically identifies that the express warranty was the description provided by the Defendants that the products were being sold at a discounted price. Compl. ¶ 189. Thus, the validity of this claim hinges on whether a description of a discounted price can constitute a "basis of the bargain" under § 2313(b). Plaintiff argues the discount was a basis of the bargain because "it induced Plaintiff to purchase the items." Compl. ¶ 206, 208. Moreover, Plaintiff cited two cases during oral argument in support of her claim: *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 887 (9th Cir. 1991) (finding

18

a district court's dismissal of an express warranty claim to be wrong because a reasonable jury could have found representations in a rental bike company's brochure to part of the basis of the bargain) and *Karim v. Hewlett-Packard Co.*, No. C 12-5240 PJH, 2014 WL 555934, at *6 (Feb. 10, 2014) ("[a] warranty statement made by a seller is presumptively part of the basis of the bargain, and the burden is on the seller to prove that the resulting bargain does not rest at all on the representation.") (citation omitted).   In light of this legal authority, this Court agrees with Plaintiff – an advertised discounted price can constitute an express warranty.  Accordingly, Defendants' motion to dismiss Plaintiff's express warranty claim is DENIED.

**Count 10: Unjust Enrichment**

Defendants argue this claim should be dismissed because California and New Jersey law do not recognize unjust enrichment as an independent cause of action.  Mot. at 21 (citing *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Products Liab. Litig.*, 754 F. Supp. 2d 1145, 1194 (N.D. Cal. 2010) ("Simply put, 'there is no cause of action in California for unjust enrichment.'") and *Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 13-6272, 2015 WL 7871165 (D.N.J. Dec. 4, 2015) ("New Jersey does not recognize unjust enrichment as an independent tort cause of action.")).  Although Plaintiff failed to respond to these arguments in their opposition, Plaintiff argued during oral argument that the *Knapp* case, 2016 WL 3268995, supports her unjust enrichment claim.  In particular, Plaintiff argued that in *Knapp*, where similar claims were alleged, the court did not dismiss plaintiff's unjust enrichment claims.  However, unlike the defendant in *Knapp* which did *not* seek to dismiss plaintiff's unjust enrichment claim, here the Defendants are seeking to dismiss Plaintiff's unjust enrichment claims.  Because

Plaintiff has failed to provide the Court with any legal authority to suggest it has a valid claim for unjust enrichment, Defendants' motion to dismiss Plaintiff's unjust enrichment claim is GRANTED WITH PREJUDICE.

**Count 11: Negligent Misrepresentation**

Defendants argue the economic loss rule bars Plaintiff's negligent misrepresentation claim because a "plaintiff may only recover in contract, and not in tort, for 'purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.'"  Mot. at 15 (quoting *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) and also citing *Arcand*, 673 F. Supp. 2d at 308 for the same proposition).  Therefore, "if a purchaser seeks damages for economic loss, without any claim of personal injury or damages to other property, he must recover in contract."  *In re Safeway Tuna Cases*, 2016 U.S. Dist. LEXIS 91072, at *6 (N.D. Cal. July 13, 2016) (dismissing a negligent misrepresentation claim using the economic loss rule).  Additionally, Defendants contend the economic loss rule bars tort claims based on the same factual allegations that seek the same damages as a contract claim.  Mot. at 15 (citing *Multifamily Captive Grp., LLC v. Assur. Risk Managers, Inc.*, 629 F. Supp. 2d 1135, 1146 (E.D. Cal. 2009).

This Court agrees with Defendants.  Because the Plaintiff has not alleged a personal injury or property damage as a result of her purchase, and because Plaintiff's negligent misrepresentation claim seeks the same damages as her breach of contract claim, the Defendants' motion to dismiss Plaintiff's negligent misrepresentation claim is GRANTED WITH PREJUDICE.

///

United States District Court
Northern District of California

**Dismissal of Injunctive Relief and Restitution**

In addition to seeking dismissal of the above claims, Defendants seek a dismissal of damages precluded by law.  Mot. at 20.  The Ninth Circuit has determined that a Rule 12(b)(6) motion can be used to dismiss damages precluded as a matter of law.  *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).  Here, Defendants seek to dismiss Plaintiff's requests for restitution and injunctive relief.  Mot. at 20–21.

**a. Restitution**

Defendants argue restitution is inappropriate because Plaintiff has "not allege[d] that she paid more than the value of what she received."  Mot. at 20.  In support of this argument, Defendants cite *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 174 (defining restitution as "the excess of what the plaintiff gave the defendant over the value of what the plaintiff received.") and *Day v. AT&T Corporation*, 63 Cal. App. 4th 325, 339 (1998) (denying restitution because "a consumer who uses a prepaid phone card obtains the full value of what was paid for and therefore has given up nothing.").

Plaintiff's failed to respond to Defendants arguments.  Because Plaintiff has not provided the Court with legal authority to suggest it has a valid claim for restitution, Defendants' motion to dismiss Plaintiff's request for restitution is GRANTED WITHOUT PREJUDICE.

**b. Injunctive Relief**

Defendants also argue that Plaintiff's request for injunctive relief is precluded by law because she is aware of Defendants' purportedly wrongful conduct such that she is no longer threatened by a repetition of the alleged violation.  Mot. at 21.  Moreover, Plaintiff

21

has failed to allege any intent to purchase any items from the Defendants' Factory Websites going forward.  *Id.*

Defendants are correct.  "In order to obtain prospective injunctive relief, a plaintiff must establish there is a likelihood of future injury."  *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1151 (N.D. Cal. 2010) (citation omitted).  Here, Plaintiff has failed to allege any intent to purchase any items from Defendants' websites in the future.  Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim for injunctive relief WITHOUT PREJUDICE.

# IV. DISMISSAL BASED ON ARBITRATION CLAUSE

Defendants also seek to dismiss Plaintiff's claims based on the arbitration provision contained in the Plaintiff's Banana Republic Visa card agreement – the credit card she used to make the online purchase giving rise to this action.  Defendants address the arbitration provision in this motion because "[a] 12(b) motion is an appropriate mechanism to enforce an arbitration provision."  *Alvarado v. Pacific Motor Trucking Co.*, No. EDCV 14-0504-DOC(DTBx), 2014 WL 3888184, at *2 (C.D. Cal. Aug. 7, 2014).  The arbitration claim in the credit card agreement states, in relevant part:

> If either you [the accountholder] or we [GE Retail Bank] make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or The Gap, Inc. if it relates to your account . . . .

Landers' Decl., Ex. 1.[9]  Additionally, the credit card agreement states "The arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA).  Utah law

---

[9] According to Gap's records, Plaintiff opened this credit card in August 1998, which was later upgraded in April 2010.  The most recent "Change in Terms" for this credit card was implemented in 2015.  Landers' Decl., ¶ 6.

shall apply to the extent state law is relevant under the FAA." *Id.*

**Legal Standard**

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable save upon grounds as exist as law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2016). "[T]he FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns, LLC,* 722 F.3d 1151, 1160 (9th Cir. 2013). However, "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes – *but only those disputes* – that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) (emphasis in original) (internal quotation marks and citations omitted). Under the FAA, the courts role is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

**Discussion**

Plaintiff argues there is no arbitration agreement between Defendants and herself because Defendants were not parties to the credit card agreement. Opp'n at 24. And even if the arbitration provision could be read as applying to Plaintiff's claims, it was superseded or waived by the Factory Site's forum selection clause, which stated at the time of her purchase:

> Any dispute arising under this Agreement shall be resolved exclusively by the state and/or federal courts of the State of California, County of San Francisco and/or the Northern District of California. . . . This Agreement constitutes the entire agreement between us relating to your use of the Sites.

Opp'n at 25; Decl. of Todd M. Friedman, ¶ 2 (ECF No. 19-1).

23

United States District Court
Northern District of California

In response, Defendants argue that even though they were not parties to the credit card agreement, they can enforce the arbitration provision as third-party beneficiaries to the agreement.  Reply at 14.  The Defendants argue that, here, where the Gap-branded credit card allows Defendants to encourage repeat business and to develop brand loyalty among customers by allowing Defendants to provide special benefits, discounts, and other incentives to its customers, the Defendants are the "principal actors and beneficiaries of the credit card agreement."  Reply at 14.  Also, because Plaintiff's claims arose from her credit card purchase, they are related to her account.  Mot. 23–24.  Therefore, Defendants contend they should be allowed to enforce the arbitration agreement, and the Court should dismiss Plaintiff's claims.

The Court finds *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014) to be instructive on this issue.  In *Goldman*, the City of Reno ("Reno") had employed Goldman, Sachs and Co. ("Goldman") to issue $73.45 million in auction rate securities ("ARS") to help Reno finance city projects.  *Id.* at 736.  The parties entered into an agreement containing both a forum selection clause.  The forum selection clause stated:

> The parties agree that all actions and proceedings arising out of this Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in the United States District Court for the District of Nevada and that, in connection with any such action or proceeding, the parties shall submit to the jurisdiction of, and venue in, such court.

*Id.* at 736–37.  Eventually, Reno's ARS auctions collapsed and Reno sought to resolve several claims against Goldman in arbitration before the Financial Industry Regulatory Authority ("FINRA").  *Id.* at 737.  This was because FINRA established rules which its members, including Goldman, agreed to comply with.  One of these rules provided that FINRA members and their customers were required to arbitrate disputes if: the customer

24

requested arbitration, the dispute was between the customer and the member, and the dispute arose in connection with the business activities of the member. *Id.* Goldman, on the other hand, filed suit in federal court seeking to enjoin the FINRA arbitration. Goldman argued Reno had disclaimed any right to arbitrate by entering the agreement between the parties, which contained the forum selection clause mentioned above. *Id.* at 737–38.

In adjudicating the dispute, the Ninth Circuit first addressed whether the parties were contesting the existence or the scope of an arbitration agreement. The court held that "[i]f the parties contest the existence of an arbitration agreement, the presumption in favor of arbitrability does not apply." *Id.* at 742. The court then found the parties were contesting the existence, rather than the scope, of an arbitration agreement because if Goldman was "correct that the forum selection clauses superseded its default obligation under the FINRA Rules, Goldman and Reno agreed *not* to arbitrate any claims that might arise out of their contractual relationship at the very time [the] relationship was formed." *Id.* at 743 (emphasis in original). Finding that the presumption of favor or arbitrability did not apply, the court stated it must "use general state-law principles of contract interpretation to decide whether a contractual obligation to arbitrate exists: If the parties' agreement is clear on its face, we must enforce it as written." *Id.* (citations omitted). But "to avoid arbitration, the forum selection clauses . . . need only be 'sufficiently specific to impute to the contracting parties the reasonable expectation that they are superseding, displacing, or waiving the arbitration obligation . . . .'" *Id.* (citation omitted). Ultimately, after rejecting several of Reno's arguments to the contrary, the court found the "all-inclusive breadth of the forum selection clauses ('all actions and proceedings'), their

25

mandatory nature ('shall'), and their reference to a judicial forum ('the United States District court for the District of Nevada')" required a finding that Reno disclaimed any right it might have had to an arbitration forum.  *Id.* at 746.

Applying *Goldman* to the facts of this case, this Court finds Plaintiff's claims are not subject to arbitration pursuant to the Plaintiff's credit card agreement.  First, the parties here, like the parties in *Goldman*, are contesting the *existence* of an arbitration agreement between them, rather than the *scope* of an arbitration agreement.  Indeed, the parties agree Defendants were not signatories to the credit card agreement.  Opp'n at 24; Reply at 13.  Also, like the parties in *Goldman*, 747 F.3d at 743, if the Plaintiff is correct that the forum selection clauses on Defendants' website superseded any prior right to arbitrate, then the parties agreed not to arbitrate any claims that might arise out of their contractual relationship at the time Plaintiff made her online purchase.  Therefore, because the parties contest the existence of an arbitration agreement, the presumption in favor of arbitrability does not apply and the court must apply state-law principles to decide whether the parties' agreement is clear that a contractual obligation to arbitrate exists and whether Defendants' forum selection clauses are "sufficiently specific to impute to the contracting parties the reasonable expectation that they are superseding, displacing, or waiving" any prior arbitration agreement.  *See Goldman*, 747 F.3d at 743.

Here, while the parties' agreement could be read to make Defendants third-party beneficiaries, the agreement itself is ambiguous.  It is not clear from the face of the agreement whether the parties intended The Gap Inc. (or any of its subsidiaries) to be a third-party beneficiary of the agreement.  Further, it is unclear to the Court how Plaintiff's claims are "related to" her credit card agreement when Plaintiff's claims are unrelated to

her method of payment; in other words, her claims against Defendants would not be affected had Plaintiff made the purchase with a different credit card or payment method. In addition, Defendants' forum selection clause stated: *Any dispute* arising under this Agreement *shall* be resolved *exclusively* by the state and/or federal courts of the State of California, County of San Francisco and/or the Northern District of California." (emphasis added).  Like the forum selection clause in *Goldman*, Defendants' forum selection clause is all-inclusive ("Any dispute"), is mandatory in nature ("shall"), and references a judicial forum ("state and/or federal courts of the State of California").  *See Goldman*, 747 F.3d at 746.  Moreover, Defendants' forum selection clause contained a merger clause providing "[t]his agreement constitutes the entire agreement between us relating to your use of the Sites."  This evidences the forum selection clause's preclusive effect against outside or prior agreements.

In sum, this Court finds the credit card agreement was unclear as to whether the parties had a contractual obligation to arbitrate Plaintiff's present claims.  Additionally, the forum selection clause on Defendants' website was "sufficiently specific to impute to the contracting parties the reasonable expectation that they [were] superseding, displacing, or waiving" the prior arbitration clause.  Thus, Defendant's motion to dismiss Plaintiff's claims based on the arbitration provision in the Plaintiff's credit card agreement is DENIED.

**V. CONCLUSION**

For the reasons discussed above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED WITH PREJUDICE as to claims one, eight, ten, and eleven.  The motion is GRANTED WITHOUT PREJUDICE as

to claims two, five, six, as well as Plaintiff's requests for injunctive relief and restitution. It is DENIED in all other respects.  Plaintiff may amend all claims dismissed without prejudice no later than **November 18, 2016**.  Failure to file timely amendment will lead to dismissal of such claims with prejudice.

**IT IS SO ORDERED.**

Dated: 10/28/16

THELTON E. HENDERSON
United States District Judge